1    **WO**

2                                    NOT FOR PUBLICATION

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    The NATIONAL FEDERATION OF THE )        No. CV-09-1359-PHX-GMS
     BLIND; the AMERICAN COUNCIL OF )
10   THE BLIND; DARRELL SHANDROW,)           **ORDER**
                                  )
11           Plaintiffs,          )
                                  )
12   vs.                          )
                                  )
13                                )
     The ARIZONA BOARD OF REGENTS;)
14   ARIZONA STATE UNIVERSITY,    )
                                  )
15           Defendants.          )
                                  )
16   _____)

17

18           Pending before the Court is Defendants Arizona Board of Regents and Arizona State

19   University's ("ASU") (collectively, "Defendants") Motion to Dismiss Plaintiff Shandrow for

20   Lack of Standing. (Dkt. # 29.) For the following reasons, the Court grants the motion.[1]

21

22

23

24

25   _____

26           [1] Plaintiffs' request for oral argument is denied because the parties have had an
     adequate opportunity to discuss the law and evidence and oral argument will not aid the
27   Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d
     724, 729 (9th Cir. 1991).
28

**BACKGROUND**

Plaintiff Darrell Shandrow ("Shandrow") is a blind student at ASU. He also pays ASU tuition and buys textbooks for class. Plaintiffs National Federation of the Blind and American Council of the Blind are non-profit corporations focused on improving the lives of people with visual impairments. ASU is a public university governed by the Arizona Board of Regents.

ASU is one of several academic institutions participating in a trial pilot program that provides textbooks to students using the Kindle DX. The Kindle DX is an electronic reading device developed by Amazon.com ("Amazon") and renders electronic books into visible text on electronic paper to simulate the experience of reading a book. The Kindle DX also includes an internal wireless modem to allow a user to download electronic books, a keyboard to allow note-taking, and other features that allow a user to look up definitions, highlight text, and search across an electronic library.

While the Kindle DX has a text-to-speech function that translates e-books into audible speech, the current menus and controls are on-screen only, with no audio option. The visual-only menu system thus the Kindle DX inaccessible to blind users.

ASU's pilot program is a one-year program that began in the Fall of 2009. The only classes participating in the pilot are three sections of the Human Event, which is offered only to Barrett Honors College students. Because Shandrow has not been admitted to the Barrett Honors College, he is not eligible to enroll in any of the pilot classes. No blind students enrolled in a pilot course nor did any seek to enroll.[2]

Students in these pilot sections do not use books; instead they receive a free Kindle DX with electronic texts. In exchange, these students agree to provide feedback to ASU and Amazon regarding the Kindle DX's viability as a textbook alternative. "Feedback from the pilot, including accessibility issues, will be considered by ASU in making *future decisions*

---

[2] ASU was already aware that the Kindle DX, at least in its current form, was not accessible to blind students.

about using the Kindle DX." (Dkt. # 43 at 3; Dkt. # 29 Ex. 2 at 1) (emphasis added).

While the pilot program is initially offered only in three sections, Dr. Adrian Sannier, the University Technology Officer and Professor in the Division of Computing Sciences at ASU, has stated that the university "plan[s] to extend the availability to all ASU students soon," and admitted that ASU has "actively sought out other programs and other courses in which to deploy the Kindle." (Dkt. # 43 Ex. 1 at 5, 18.) Dr. Sannier also stated, however, "Kindle is . . . not fully emerged . . . . And so what ASU is trying to do . . . is understand [the Kindle's] limitations and . . . how that market will evolve so that ASU can be in a position to make effective use of this change in technology to serve all of its students." (*Id.* at 5.)

Plaintiffs asserted claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* Defendants then moved to dismiss only Shandrow for lack of standing.

## DISCUSSION

A party invoking federal jurisdiction has the burden of establishing that it has standing to ensure a true "case or controversy" under Article III.[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2. "The evidence relevant to the standing inquiry consists of 'the facts as they existed at the time the plaintiff filed the complaint.'" *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) (quoting *Lujan*, 504 U.S. at 569 n. 4). To demonstrate standing, a party first must have "'suffered an injury in fact.'" *Id.* (quoting *Lujan*, 504 U.S. at 560–61). Additionally, "'there must be a causal connection between the injury and the conduct complained of'" and "'it must be

---

[3] Both parties have submitted extrinsic evidence. Although normally extrinsic evidence converts a motion to dismiss into a motion for summary judgment, in resolving a motion to dismiss for lack of subject matter jurisdiction, the Court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits [of the] case." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *see Roberts*, 812 F.2d at 1177.

likely, as opposed to merely speculative, that injury will be redressed by a favorable decision.'" *Id.* In this case, Defendants contest only the injury-in-fact prong.

An injury-in-fact must be "'concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). The plaintiff also must show "an invasion of a legally protected interest" that "'affect[s] the plaintiff in a personal and individual way.'" *Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103 (quoting *Lujan*, 504 U.S. at 560).

## I. Threatened Harm Standing

An injury-in-fact need not be a past or present harm; "threatened rather than actual injury can satisfy Article III standing requirements." *Harris v. Bd. of Supervisors, Los Angeles County*, 366 F.3d 754, 761 (9th Cir. 2004). However, the plaintiff still must establish a "credible threat" of injury, rather than "some day" harm that might occur. *Id.* (internal quotations omitted).

For example, the plaintiffs in *Lujan* lacked standing to challenge environmental policy because they had only "observed" environmental habitats and merely "intended to return sometime in the future to try to see the animals." 504 U.S. at 563–64. This alleged injury constituted only possibility of harm, rather than concrete and particularized harm. *Id.* The parties cite several cases finding standing for risk of future harm, but none of these cases control Shandrow's claim. *See, e.g.*, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718–19 (2007) (finding parents had standing to challenge a race-based admissions policy where (1) their children were eligible to enroll, but had not yet been denied admission based on race, and where (2) the parents and children would have to compete for high school seats in a race-based system that might deny equal protection); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (holding environmental organization had standing to challenge the issuance of a permit that would allow the construction of a dock that would heighten risk of tanker traffic and oil spills); *Harris v. Bd. of Supervisors, Los Angeles County*, 366 F.3d 754, 761 (9th Cir. 2004) (finding chronically ill individuals who relied on the county's health-care system had standing to challenge the

county's announced reduction of hospital-availability where such a policy would impede the individuals' access to medical care); *Covington v. Jefferson County*, 358 F.3d 626, 638 (9th Cir. 2004) (finding standing where plaintiffs lived across the street from an improperly-run landfill that clearly increased the risk of fires, explosions, and contamination).  In each of those cases, the plaintiffs had demonstrated a clear policy and a clear likelihood that the plaintiffs would be affected by the policy.  For example, parents have standing if their children are eligible to enroll in a race-based admissions system; environmental organizations have standing to challenge already-issued permits that increase the risk of damage; patients have standing to challenge an announced and definite plan to reduce medical care; and people have standing to challenge a landfill that is already poorly-run and that might increase the risk of harm.

Conversely, Shandrow has not identified any clear policy by ASU that will in any way impact him.  ASU has neither decided it will extend the Kindle DX program nor determined how accessible the future technology will be.  Rather, Shandrow has merely observed ASU policies, but is not in a position to be discriminated against because of the policy.  Unlike the plaintiffs in the cases finding standing, Shandrow is not directly affected by the pilot program; he is ineligible to enroll for any classes in the Barrett Honors College—the only college in which Kindle DX classes are currently offered.  That ASU might expand the Kindle DX program to other classes, that Shandrow might attempt to enroll in those classes, and that the Kindle DX might remain inaccessible is merely speculative.  Even though Dr. Sannier has noted his excitement about the Kindle DX pilot program, he admits that the technology is "not fully emerged" and that ASU is trying to understand how the Kindle might evolve in the future, suggesting that even if ASU decided to expand the Kindle program, it might require the technology to be more accessible before doing so.  In fact, even Plaintiffs' Response notes Dr. Sannier's statement that ASU will use the pilot program to make "future decisions" about the Kindle DX.  While the threat of future harm is sometimes sufficient to show standing, Plaintiffs have not shown a credible threat of a definite ASU policy of Kindle DX use that will affect Shandrow.

1    **II.    Dignitary Harm Standing**

2         Plaintiffs next assert Shandrow has standing based on the "dignitary harms" of feeling

3    unwelcome and offended by ASU's use of an inaccessible technology.  Even if dignitary

4    harm sometimes is a basis for standing, Shandrow has not shown it.  Plaintiffs cite several

5    cases noting that a plaintiff may have standing if he or she actually has personal knowledge

6    of discrimination, even if the discrimination is not directly aimed at that plaintiff.  Again,

7    these cases do not control.  For example, testers, people who test compliance with anti-

8    discrimination laws, have standing under various nondiscrimination statutes. *See, e.g.*, *Smith*

9    *v. Pac. Prop. & Dev. Corp.* 358 F.3d 1097, 1107 (9th Cir. 2004) (holding that a tester had

10   standing under the Fair Housing Amendments Act after observing architectural barriers that

11   were "overtly discriminatory condition[s]" against disabled peoples' access); *Tandy v. City*

12   *of Wichita*, 380 F.3d 1277, 1286 (10th Cir. 2004) (finding testers had standing under the

13   Americans With Disabilities Act and the Rehabilitation Act).  Similarly, residents have

14   standing if they suffer a "distinct and palpable injury" resulting from overhearing their

15   apartment managers discriminate against testers on the basis of race. *Harris v. Itzhaki*, 183

16   F.3d 1043, 1048–50 (9th Cir. 1999).

17        In this case, the facts that Shandrow has "knowledge" of ASU's Kindle DX program,

18   that he feels the policy is "offensive," and that the policy makes him feel "unwelcome" do

19   not rise to the level of injury present in the testers cases.  In each of the above-cited cases,

20   discrimination actually occurred.  Here, Plaintiffs do not allege any facts showing actual

21   discrimination.  That ASU is using a technology that, in its present form only, is inaccessible

22   to blind people is not the type of "overtly discriminatory condition" that gives rise to

23   standing.  Moreover, although the Kindle DX is not accessible to blind people, no blind

24   people applied for, nor were deterred from applying for, any pilot classes.  Shandrow's

25   argument, therefore, is simply that he should have standing because he disagrees with a piece

26   of technology ASU uses that, *if applied to blind people*, would be inaccessible.  This alone

27   is not a basis for standing.

28

1      Furthermore, Plaintiffs cite *Barnes-Wallace v. City of San Diego*, which held that

2   lesbian and agnostic individuals had standing to challenge San Diego's policy of allowing

3   the Boy Scouts to control and manage a public park; plaintiffs there had asserted they would

4   have used the park but for the Boy Scouts' allegedly discriminatory policies against

5   homosexuals and agnostics. 530 F.3d 776, 784–87 (9th Cir. 2007).  The city's policy

6   functionally denied the plaintiffs use and enjoyment of public lands. *Id.*  The court

7   emphasized that the plaintiffs had suffered "injuries beyond 'the psychological consequence

8   presumably produced by observation of conduct with which [they] disagree[]' because their

9   inhibition interferes with their personal use of the land." *Id.* at 784 (internal citations

10  omitted).  Here, Shandrow has not alleged actual injury to his use of ASU facilities, but

11  rather has asserted only psychological injuries based on the conduct of a pilot program with

12  which he disagrees.  Unlike *Barnes-Wallace* plaintiffs, who would have entered the park but

13  for the Boy Scout creeds, Shandrow does not identify any ASU facility that he is entitled to

14  use, but is prevented from using based on the Kindle DX pilot program.  Shandrow is not

15  eligible to enroll in any classes using the Kindle DX, regardless of how inaccessible the

16  Kindle DX is to blind students.  Shandrow cannot claim ASU's Kindle policy has deterred

17  him from entering any class or otherwise prevented his enjoyment of any of ASU's programs

18  because he was not eligible to take those classes in the first place.  Standing does not extend

19  so far as to allow any person to challenge any university decision simply because he or she

20  disagrees with it.

21  **III.    Tuition-Payer Standing**

22      Plaintiffs next contend Shandrow has suffered a tangible, economic injury because

23  ASU has used his tuition payments to support technology that is inaccessible to him.  The

24  Court is unaware of any binding authority stating that a student seeking to challenge

25  university policy has standing based solely on making tuition payments.

26      Plaintiffs' argument is analogous to taxpayer standing.  "It is well established that

27  individuals do not generally have standing to challenge government spending solely because

28  they are taxpayers, because 'it is a complete fiction to argue that an [illegal] expenditure

causes an individual . . . taxpayer any measurable economic harm.'" *Winn v. Az. Christian School Tuition Org.*, 562 F.3d 1002, 1008 (9th Cir. 2009) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion)); *see also DiamlerChrysler Corp. v. Cuno*, 547 US. 332, 342–49 (2006) (rejecting taxpayer standing for state taxpayers because the alleged injury is merely "conjectural or hypothetical" and because a "taxpayer-plaintiff has no right to insist that the government dispose of any increased revenue . . . by . . . bolstering programs that benefit [him or her]").

In this case, Shandrow does not have standing solely because he pays tuition that helped fund ASU's Kindle DX pilot program. Shandrow contends that because he has paid tuition, he should be able to challenge any university policy. The Court finds no reason why Shandrow's tuition expenses caused any measurable harm beyond the conjectural or hypothetical. This is especially true given that allowing anyone who pays tuition to challenge any university expenditure in court would hamstring a university's freedom to spend money in a way its administration determines benefits the student body and the community as a whole.

Plaintiffs cite *Hack v. President & Fellows of Yale Coll.*, in which Orthodox Jewish students had standing to challenge Yale's requirement that they lease and live in co-ed dormitories in violation of their religious beliefs. 237 F.3d 81, 88 (2d Cir. 2000), *abrogated on other grounds*, *Sweirkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). The court found an economic injury-in-fact because these students were forced to pay for rooms that, because of their religious beliefs, were effectively "made unavailable" to them. *Id.* This case is distinguishable. The plaintiffs in *Hack* challenged a special payment requirement—leasing of dormitories—Shandrow's challenge is based solely on his general tuition payment. *Id.* The *Hack* plaintiffs did not appear to argue they had standing simply because Yale spent tuition money to build and operate dormitories; they rather challenged a policy that forced them to pay for something they could not use. *Id.* Shandrow has not raised a particular expenditure or other economic injury he has suffered that goes beyond general tuition. The fact that some of Shandrow's tuition money might have been used to support the Kindle DX

program is insufficient to establish standing because the Court will not "speculate[] on the inner workings of university and state budgetary mechanisms to discern" what injury might have occurred. *See Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007) (declining to find standing to challenge targeted tuition subsidies where the court would be forced to speculate on alleged "competition for scarce tuition resources").

## CONCLUSION

Plaintiffs have not demonstrated that Shandrow has standing to bring any claims against Defendants. Defendants have not asserted that either the National Federation of the Blind or the American Council of the Blind lack standing.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 29) Plaintiff Shandrow for Lack of Standing is **GRANTED.**

DATED this 16th day of October, 2009.

G. Murray Snow
United States District Judge